UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
JULIE VITRANO, individually and on
behalf of all others similarly
situated,

       **MEMORANDUM & ORDER**

     *Plaintiff*,

       18-CV-06754(KAM)(RLM)

       -against-

N.A.R., INC.,

     *Defendant*.
---------------------------------X
**MATSUMOTO, United States District Judge:**

       Pending before the court is defendant's motion to
compel arbitration and strike plaintiff's class action.
Plaintiff Julie Ann Vitrano ("plaintiff") brings this class
action against defendant N.A.R., Inc. ("defendant" or "NAR")
alleging a violation of the Fair Debt Collection Practices Act,
("FDCPA"), 15 U.S.C. § 1692, *et seq*. (ECF No. 1, Complaint
("Compl.").)  NAR moves for summary judgment to compel
arbitration and stay proceedings in this court.  Plaintiff is
the debtor under a consumer finance contract.  That contract,
which contains an arbitration clause, was purportedly assigned
to NAR for the purpose of collecting plaintiff's debt.  At its
core, this dispute turns on whether the assignment of rights to
NAR also included the right to compel arbitration of plaintiff's
claim.  For the reasons set forth below, the court finds that
NAR was assigned the right to compel arbitration of plaintiff's

FDCPA claim, and accordingly, defendant's motion to compel arbitration, and strike plaintiff's class action claims, is granted, and this case is hereby stayed.

**BACKGROUND**

The pertinent facts, which by and large are not disputed, are set forth below.

## I.   The Lease

On or about October 13, 2016, plaintiff executed a Rental Purchase Agreement ("Lease") with Crest Financial Services, LLC ("Crest").  (ECF No. 16-2, Lease.)  Plaintiff, as lessee, rented certain articles of furniture from Crest, subject to a fixed schedule of payments, with an option to purchase the furniture contingent on full compliance with the Lease's terms. (Lease § 2.)

The Lease conspicuously alerts the plaintiff-lessee to an arbitration provision:

> THIS LEASE CONTAINS AN ARBITRATION PROVISION (SEE §15). UNLESS YOU PROMPTLY REJECT THE ARBITRATION PROVISION (SEE §15(a)), THE ARBITRATION PROVISION WILL HAVE A SUBSTANTIAL EFFECT ON YOUR RIGHTS IN THE EVENT OF A DISPUTE, INCLUDING YOUR RIGHT TO BRING OR PARTICIPATE IN A CLASS ACTION PROCEEDING.

(*Id.* at ECF p. 2 of 9.)  Directly below, the Lease defines certain key pronouns used throughout the agreement:

> In this Lease, "you" and "your" mean the person(s) signing this Lease as Lessee, and "we," "our," and "us" mean [Crest] *and its successors and assigns*.

(*Id.* (emphasis added).)  The Lease further provides that, by signing the contract, plaintiff "agree[s] to all its terms, including the . . .  ARBTIRATION PROVISION (§ 15)."  (*Id.*)

This dispute centers on section 15 of the Lease, the arbitration clause ("Arbitration Clause").  The Arbitration Clause provides that, barring plaintiff's rejection or a conflict with applicable law, "you and we agree that either party may elect to arbitrate or require arbitration of any Claim under the Arbitration [Clause]."  (*Id.* § 15(a)(i).)  The Lease afforded plaintiff a 30-day window in which to reject the Arbitration Clause.  (*Id.* § 15(a)(ii).)  Plaintiff did not reject the Arbitration Clause.

The Arbitration Clause incorporates a more expansive definition of "we," "us," and "our" than elsewhere in the Lease. Specifically, the terms "we," "us," and "our" include "Related Parties," which encompasses Crest's corporate parents, subsidiaries, and affiliates, as well as "third parties that you bring a Claim against at the same time you bring a Claim against us or any other Related Party . . . ."  (*Id.* § 15(b)(i).)  Claim is also broadly defined as:

> any claim, dispute or controversy between you and us (including any Related Party) that arises from or relates in any way to this Lease or the Property (including any amendment, modification or extension of this Lease); any prior lease between you end [*sic*] us, and/or the property subject to such prior lease; any of our marketing, advertising, solicitations and

conduct relating to this Lease, the Property and/or a prior lease and related property; our collection of any amounts you owe; or our disclosure of or failure to protect any information about you.

(*Id.* § 15(b)(ii).)  The Lease makes clear that "'Claim' is to be given the broadest reasonable meaning and includes claims of every kind and nature," and "includes disputes that seek relief of any type . . . ."  (*Id.*)

Finally, the Lease explicitly states in capital letters that either party's election of arbitration nullifies plaintiff's right to seek classwide relief in court or in arbitration:

> (f) *No Class Actions or Similar Proceedings; Special Features of Arbitration.* IF YOU OR WE ELECT TO ARBITRATE A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO: (i) HAVE A COURT OR JURY DECIDE THE CLAIM; . . . (iii) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBRITRATION, EITHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR CLASS OPPONENT . . . .

(*Id.* § 15(f).)  The Arbitration Clause also included a stipulation that the Lease involves interstate commerce and that the Arbitration Clause is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*  (*Id.* § 15(i).)

## II.  Assignment Agreement

On or about January 18, 2017, Crest entered into an agreement with NAR to assign past due accounts to NAR for collection ("Assignment Agreement").  (ECF No 16-1, Declaration

of Jameson Murray ("Murray Decl. (1st)") ¶ 5.)[1]  The Assignment

Agreement does not effect a specific assignment of plaintiff's

account to NAR.  Functionally, the Assignment Agreement is a

master agreement governing the terms of prospective, periodic

assignments of accounts by Crest to NAR for debt collection

purposes.  For any such assignment, Crest agreed to:

> transfer[], assign[] and set[] over to NAR, [Crest's]
> claims and demands against all debtors assigned
> together with all of [Crest's] rights, title and
> interest therein, and the demands represented thereby,
> and all rights of action accrued or to accrue.

(Assignment Agreement § 1.)  Crest also granted NAR, subject to

limitations specified elsewhere in the agreement, "full power to

collect, compromise, reassign, or in any other manner enforce

the collection" of Crest's claims.  (*Id.*)

     The Assignment Agreement described the mechanics for

prospective assignments:

> Assignments shall be made by forwarding collection
> accounts to NAR.  Each time NAR receives accounts from
> [Crest], NAR will send [Crest] an Acknowledgment
> Report. Appearance of an account on the Acknowledgment
> Report or appearance of the account on a Statement or
> Status Report shall evidence that the account has been
> validly assigned ("Assigned Account") pursuant to the
> terms of this Agreement.

---

[1]      The date of the Assignment Agreement is unclear from the document's
face.  The handwritten words "Crest Financial" appear on the line reserved
for the document's execution date.  (*See* Assignment Agreement, Recital.)  The
Murray Declaration, however, attests under oath that the Assignment Agreement
was entered into between Crest and NAR on January 18, 2017, (Murray Decl. ¶
5), a fact plaintiff does not dispute, and which date the court accepts.

(*Id.* § 2.)   The Assignment Agreement "covers every Assigned Account regardless of when the account was assigned."   (*Id.* § 15.)

## III.   Assignment of Plaintiff's Account

On December 19, 2018, three weeks after plaintiff filed this lawsuit, Crest's Director of Collections, Lester Rueda, signed an "Evidence of Assignment of Debt" relating to plaintiff's account with Crest ("NAR Assignment").[2]   (ECF No. 16-4, NAR Assignment.)   The NAR Assignment states that Crest assigned plaintiff's debt to NAR on January 17, 2018, along with "full power to sue, . . . or in any other legal manner enforce collection thereof."   (*Id.; see also* ECF No 16-1, Declaration of Jameson Murray ("Murray Decl.") ¶ 7 ("As of January 17, 2018, Crest assigned Plaintiff Julie Ann Vitrano's [] account with Crest [] to N.A.R. in accordance with the Evidence of Assignment of Debt.").)[3]   On January 26, 2018, plaintiff received a letter from NAR alerting her that the debt she owed to Crest had been "placed with N.A.R., Inc. for collections."   (Compl., Exhibit A

---

[2]     The NAR Assignment refers to "Julie Ann Vitrane," which appears to be a misspelling of plaintiff's name.   Plaintiff does not raise an argument of mistaken identity, so the court assumes the NAR Assignment references the relevant debt at issue, without regard to its validity.

[3]     NAR's Operations Department Manager, Jameson Murray, attests that Crest only provided NAR with copies of the Lease "and other documents regarding Plaintiff's account" when NAR requested the documents after this case commenced.   (Murray Decl. ¶ 10.)

("Collection Letter").) The Collection Letter reflects a total outstanding balance of $3,054.12. (*Id.*)

After the instant motion was fully-briefed, NAR also filed a copy of its Acknowledgement Report to Crest. (ECF No. 28-1.) The Acknowledgement Report is redacted to protect third-party debtor information, but page 119 of the report refers to a debt owed by "Vitrane, J." in an amount of $2,904.12, assigned January 17, 2018. (*Id.* 119.)[4] The outstanding debt amount stated in the Acknowledgement Report matches the principal outstanding in the Collection Letter, and like the Collection Letter and NAR Assignment, refers to plaintiff as "Julie Ann Vitrane." (*Compare id. with* NAR Assignment, and Collection Letter.)

## IV. The Motion

Plaintiff initiated this action on November 28, 2018. The complaint alleges NAR's Collection Letter to plaintiff violated the FDCPA by stating she owed $150 in fees without indicating either the nature of the fees or whether they will continue to accrue, and by displaying total interest of "0.00," despite plaintiff's belief that the total outstanding debt of $3,054.12 already incorporates accrued interest. (Compl. ¶¶ 20-23.) Plaintiff also alleges that the Collection Letter violates

---

[4]    As with the Collection Letter, this appears to be a misspelling of plaintiff's name.

the FDCPA by failing to clarify who the current creditor is under plaintiff's account. (*Id.* ¶ 34.) Plaintiff asserts that a class action under Federal Rule of Civil Procedure 23 is appropriate because the Collection Letter was part of a mass-mailing of similar debt collection letters to similarly-situated individuals that raise common questions of fact and law. (*Id.* ¶ 36.)

NAR moves to compel arbitration pursuant to the Lease's Arbitration Clause. (ECF No. 16, Defendant N.A.R., Inc.'s Memorandum of Law in Support of its Motion to Compel Arbitration and to Strike Plaintiff's Class-Action Claims ("Mot.").) Defendant's argument is straightforward: plaintiff agreed to forego individual and class action litigation and agreed to arbitrate any claims related to her account under the Lease's Arbitration Clause; plaintiff's FDCPA claim relates to her account under the Lease; Crest transferred to NAR by valid assignment all its rights under the Lease, including the right to compel arbitration; therefore, NAR is entitled to compel arbitration of plaintiff's FDCPA claim under the FAA, and the class action claims must be stricken. (*See generally Mot.*)

Plaintiff opposes arbitration.[5] (*See* ECF No. 17, Response in Opposition to Motion to Compel Arbitration ("Opp.").) Although she acknowledges the Lease includes an

---

[5] As noted below, plaintiff musters only perfunctory opposition to the motion to strike class claims.

otherwise valid Arbitration Clause, she does not accept that NAR, as a non-signatory to the Lease, may invoke the Arbitration Clause. (Opp. 1.) Plaintiff contends that the Arbitration Clause specifically carves out third parties like NAR from invoking its remedies because the term "Related Party" does not explicitly encompass Crest's assigns. (*Id.* 3.) She argues that where the Lease contemplates a third party's right to pursue arbitration, it is only in circumstances where a plaintiff is bringing a claim against the third party at the same time she is pursuing a claim against Crest or the Crest corporate enterprise. (*Id.* 3-4.) Plaintiff also contests NAR's status as an assignee. According to plaintiff, Crest merely gave NAR "the ability to try to <u>help them</u> collect the debt for a fee," and the Assignment Agreement does not transfer the Lease or the Arbitration Clause, or even reference arbitration. (*Id.* 5-6 (emphasis in original).) Finally, plaintiff asserts the Lease's definition of "we," "our," and "us," which includes assigns, is superseded by Arbitration Clause's "more specific" definition of those terms. (*Id.* 7-9.) Thus, assigns like NAR are not among the parties with standing to utilize the Arbitration Clause's remedies. (*Id.*)

## LEGAL STANDARD

The Lease is governed by the FAA, which creates a "body of federal substantive law of arbitrability, applicable to

any arbitration agreement within the coverage of the Act."
*Moses H. Cone Mem'l Hosp. v. Mercury Corp.*, 460 U.S. 1, 24
(1983).  Under the FAA, an arbitration provision in a contract
involving a commercial transaction "shall be valid, irrevocable,
and enforceable, save upon such grounds as exist at law or in
equity for the revocation of any contract."  9 U.S.C. § 2; *see
also In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127
(2d Cir. 2011).  The FAA "embod[ies] [a] national policy
favoring arbitration and a liberal federal policy favoring
arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 563
U.S. 333, 346 (2011) (quotation marks and citations omitted;
second modification in original).

Consistent with these principles, a court must resolve
four inquiries to determine whether an action should be ordered
to arbitration:

> [F]irst, it must determine whether the parties
> agreed to arbitrate; second, it must determine
> the scope of that agreement; third, if federal
> statutory claims are asserted, it must consider
> whether Congress intended those claims to be
> nonarbitrable; and fourth, if the court concludes
> that some, but not all, of the claims in the case
> are arbitrable, it must then decide whether to
> stay the balance of the proceedings pending
> arbitration.

*JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004)
(citing *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d

Cir. 1998)). Only the first three inquiries pertain here because the complaint alleges a single claim.

The FAA does not prioritize agreements to arbitrate over other binding agreements. *Brecher v. Midland Credit Mgmt., Inc.*, No. 18CV3142ERKJO, 2019 WL 1171476, at *2 (E.D.N.Y. Mar. 13, 2019) (citing *Prima Paint Corp. v. Floo & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). The statute places "arbitration agreements on equal footing with other contracts, but it does not require parties to arbitrate when they have not agreed to do so." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002) (quotation marks omitted). A district court considering the arbitrability of a dispute must preliminarily decide whether an arbitration agreement exists. *See BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014); *see also John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 53 (2d Cir. 2001) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.") (quotation marks and citations omitted). This question turns on state contract law. *See Bell v. Cendant Corp.,* 293 F.3d 563, 566 (2d Cir. 2002). Here, New York law controls.[6]

---

[6]     Because plaintiff was a New York resident at the time the Lease was executed, New York law governs interpretation of the Arbitration Clause. (*See* Lease § 15(i).) Neither party disputes that New York substantive law governs the issue of contract interpretation. *See Golden Pac. Bancorp v. FDIC,* 273 F.3d 509, 514 n.4 (2d Cir. 2001) ("[S]uch implied consent is . . .

When the question of arbitrability arises in the
context of a motion to compel arbitration, courts apply a
standard roughly equivalent to summary judgment. *Meyer v. Uber
Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). All relevant,
admissible evidence submitted by the parties is considered and
all reasonable inferences are drawn in favor of the non-moving
party. *Id.; see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220,
229 (2d Cir. 2016). "If there is an issue of fact as to the
making of the agreement for arbitration, then a trial is
necessary." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir.
2003); *see also* 9 U.S.C. § 4. If, however, "the undisputed
facts in the record require the matter of arbitrability to be
decided against one side or the other as a matter of law, [the
court] may rule on the basis of that legal issue and avoid the
need for further proceedings." *Wachovia Bank, Nat. Ass'n v. VCG
Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d
Cir. 2011) (internal quotations omitted.)

**DISCUSSION**

**I.   Agreement to Arbitrate**

Plaintiff does not dispute that she signed the Lease
and that the Lease includes an Arbitration Clause, from which
she did not opt out. (*See* Opp. 3 ("The arbitration clause upon

---

sufficient to establish the applicable choice of law.").

which the Defendant is attempting to rely was an agreement made between the Plaintiff Julie Ann Vitrano and Crest Financial.") (emphasis removed).)  Although the Lease provided plaintiff with a 30-day window to reject the Arbitration Clause (*see* Lease § 15(a)(ii)), plaintiff does not contend that she rejected the provision or otherwise challenged its validity.  Accordingly, the court finds that plaintiff agreed to arbitration with Crest.

## II.  Scope of Arbitration Clause

To determine whether plaintiff's FDCPA claim falls within the scope of the Arbitration Clause, the court must "classify the particular clause as either broad or narrow." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001).  If an arbitration clause is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties rights and obligations under it."  *Id*. (internal quotations omitted.)  This presumption may be overcome only if "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (citations omitted).

Here, the Arbitration Clause is clearly broad in scope, as it permits either party to arbitrate any "Claim," and defines Claim to include any "dispute or controversy between you

and us . . . that arise from or relates in any way to this Lease or the Property."  (Lease §§ 15(a)(i), (b)(ii).)  The Lease affords Claim "the broadest possible meaning and includes claims of every kind and nature," including those "based on . . . statute" and relating to "collection of any amounts you owe." (*Id.* § 15(b)(ii).)

The Arbitration Clause's reference to "any dispute" is "the paradigm of a broad clause," *Collins v. Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 2005), and the Second Circuit has consistently held that arbitration provisions applicable to "any claim" or "any dispute" should be considered "broad."  *See*, *e.g.*, *JLM Indus.*, 387 F.3d at 172 (finding an arbitration clause encompassing "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter" broad in scope); *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 649 (2d Cir. 2004) ("any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement").  Plaintiff does not dispute her FDCPA claim is arbitrable.  Nor could she.  A statutory cause of action arising from the attempted collection of plaintiff's debt is encompassed generally and specifically under the Lease ("collection of any amounts you owe"), and falls squarely within the scope of the Arbitration Clause.  (*See generally* Compl.)

### III.  Arbitrability of FDCPA Claims

Generally, federal statutory claims are arbitrable unless Congress clearly communicates otherwise.  *See CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 103 (2012) (finding that when Congress restricts the use of arbitration, it does so with clarity); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA.").  The party opposing arbitration bears the burden to establish that Congress "intended to preclude arbitration of the statutory claims at issue."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000).  Plaintiff makes no such assertions, and there is no indication that Congress intended FDCPA claims to be nonarbitrable.  *See, e.g.*, *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 475 (S.D.N.Y. 2013) (finding "nothing in . . . FDCPA indicates a clear congressional intent to promote class recovery" or any statutory rights that would preclude individual arbitration).

### IV.  Assignment of Debt

There is no dispute that the Arbitration Clause is valid and applicable.  The only remaining, dispositive question is whether NAR can enforce it.  This question is itself two-pronged: *first*, can the Arbitration Clause in question be enforced by assignees; *second*, did Crest, in fact, assign to NAR

the right to arbitrate claims relating to plaintiff's account?
As explained below, the court answers both questions in the
affirmative.

### A. The Arbitration Clause is Assignable

"Under New York law, an arbitration clause is
generally held to apply to the assignee of a contract." *See
Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG*,
970 F. Supp. 2d 157, 166 (S.D.N.Y. 2013) (citing *Lipman v.
Haeuser Shellac Co., Inc.*, 43 N.E.2d 817 (N.Y. 1942)); *see also
Jugometal v. Samincorp, Inc.*, 78 F.R.D. 504, 507 (S.D.N.Y. 1978)
("An assignee has the same standing to enforce an arbitration
award in this Court as its assignor would have . . . ."). It
follows that assignees generally have standing to enforce an
arbitration clause to the same extent as their assignors.
*Brecher v. Midland Credit Mgmt., Inc.*, No. 18CV3142ERKJO, 2019
WL 1171476, at *6 (E.D.N.Y. Mar. 13, 2019) ("Arbitration
contracts may be enforced not only by the original parties but
also by assignees.") (internal quotation marks and citations
omitted). To do so, the assignee must prove assignment of a
contract by a preponderance of the evidence. *Zambrana v.
Pressler & Pressler, LLP*, No. 16-CV-2907 (VEC), 2016 WL 7046820,
at *5 (S.D.N.Y. Dec. 2, 2016); *see Solar & Envtl. Techs. Corp.
v. Zelinger*, 726 F. Supp. 2d 135, 143, 148 (D. Conn. 2009)
(holding that under New York law, party seeking to enforce

arbitration agreement must prove agreement by preponderance of the evidence) (citing *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993)).

It is beyond dispute that the Lease, and the Arbitration Clause in particular, may be enforced by Crest's assignees. The Lease defines the terms "we," "our," and "us" to include "Crest Financial Services, LLC, and its successors and *assigns*." (Lease at ECF p. 2 of 9 (emphasis added).) The Arbitration Clause, which states that "'you' and '*we*' agree that either party may elect to arbitrate or require arbitration of any Claim," (*id.* § 15(a)(i) (emphasis added)), plainly authorizes Crest's assignees to elect arbitration of claims arising under the Lease.

Plaintiff nonetheless resists such a straightforward interpretation of the Arbitration Clause. She concedes that assignees fall under the Lease's general definition on "we," "our," and "us," but asserts that the underlying contract "specifically excluded" assignees from enforcing the Arbitration Clause. (Opp. 3, 8.) Plaintiff argues that the Arbitration Clause is governed by its own, unique set of definitions that overrides the Lease's general terms. (*Id.* 8.) Indeed, the Arbitration Clause modifies the default meaning of "we," "us," and "our" to:

> *include* our "Related Parties" - all our parent
> companies, subsidiaries and affiliates, and our and
> their employees, directors, officers, shareholders,
> governors, managers and members.

(Lease § 15(b)(i) (emphasis added).)  The term "Related Parties"
further:

> include[s]  third  parties  that  you  bring  a  Claim
> against at the same time you bring a Claim against us
> or  any  other  Related  Party,  including,  without
> limitation,  the  merchant  who  sold  us  the  Property  we
> then leased to you.

(*Id.*)

Plaintiff confuses the modification of a term with its
wholesale substitution.  It is well-settled that, in
interpreting a contract's terms, courts must give effect to the
plain meaning of its words.  *Consumer Fin. Prot. Bureau v. RD
Legal Funding, LLC*, 332 F. Supp. 3d 729, 754 (S.D.N.Y. 2018).
The word "include" is defined by Black's Law Dictionary as "to
contain as a part of something."  INCLUDE, Black's Law
Dictionary (11th ed. 2019).  As used in the Arbitration Clause,
"include" merely *adds* Related Parties to the parties encompassed
by "we," "us," and "our," which encompasses assignees, and
plainly expands the category of parties that may elect
arbitration.  Although the parties spill ink over whether NAR is
a "Related Party," the court need not wade into that dispute at
all.  The language of the Arbitration Clause is clear,
unequivocal, and unambiguous: Crest's assignees may enforce the

Arbitration Clause regardless of whether they are Related Parties.

Plaintiff also urges the court to construe the Arbitration Clause as protecting plaintiff, Crest, and Crest's related corporate entities, but not "third parties" such as NAR, unless Crest is also sued. The court agrees that "third parties" may only elect arbitration in the event that Crest is sued as well, but that has no practical impact on NAR's capacity to arbitrate. NAR is an assignee of Crest and stands in its shoes; thus, NAR *is* a party to the Lease, not a *third party*. *See* THIRD PARTY, Black's Law Dictionary (11th ed. 2019)(defining third party as "[s]omeone who is not a party to a lawsuit, agreement, or other transaction but who is somehow implicated in it; someone other than the principal parties."); *Richard T. Blake & Assocs., Inc. v. Aetna Cas. & Sur. Co.,* 255 A.D.2d 569 (N.Y. App. Div. 2d Dep't 1998) ("It is well established that an assignee stands in the shoes of the assignor . . . ."); *cf. United States v. Paccione*, 101 F.3d 687 (2d Cir. 1996) (distinguishing between third parties and assignees to written agreement).

Furthermore, plaintiff's reasoning, that the Arbitration Clause's modification of "we," "us," and "our" precludes Crest's assignees from electing arbitration, would, if carried to its logical conclusion, deprive Crest itself of the

right to elect arbitration.  The plaintiff argues that the Arbitration Clause "re-defines" the Lease's default definitions for "we," "us," and "our," effectively substituting "assignees" with "Related Parties."  (Opp. 8.)  Plaintiff's strained interpretation would also write Crest out of the Arbitration Clause, because the relevant text overtly refers to Crest's parent companies, subsidiaries, and affiliates, but does not expressly reference Crest itself, just as it does not expressly reference Crest's assigns.  The notion that Crest intentionally forfeited the right to elect arbitration when it executed the Lease and agreed to the Arbitration Clause is, of course, nonsensical, and discredits the plaintiff's proposed reading of the Arbitration Clause.  *See Luver Plumbing & Heating, Inc. v. Mo's Plumbing & Heating*, 144 A.D.3d 587, 588 (N.Y. App. Div. 1st Dep't 2016) ("[A] contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties[.]") (citation omitted).

The Arbitration Clause is thus assignable, and may be enforced by Crest's assignees.  The final issue is whether Crest assigned the Arbitration Clause to NAR.

**B. NAR May Enforce the Arbitration Clause**

Crest validly assigned its rights under the Lease to NAR on January 17, 2018.  These rights included the ability to

elect arbitration of any disputes with plaintiff arising under
the Lease.  To support the assignment's validity, NAR offers two
affidavits by Jameson Murray.  (Murray Decl. (1st); ECF No. 28-
2, Second Declaration of Jameson Murray ("Murray Decl. (2nd)").)
Murray's affidavits and the attached exhibits are admissible
under Federal Rule of Evidence 803(6).[7] Murray states that, as
NAR's Operations Department Manager since November 5, 2015, and
a NAR employee since 2011, his declaration is based on "personal
knowledge gained through [his] employment" and upon his review
of NAR's business records.  (Murray Decl. (1st) ¶¶ 2, 4; Murray
Decl. (2nd) ¶¶ 3, 6.)  Murray further explains that the records
appended to his declarations were "made by, or from information
transmitted by, a person with knowledge" of the events pertinent
to defendant's motion, and "are kept in the ordinary course of
the regularly conducted business activity of such person and
[NAR]."  (Murray Decl. (1st) ¶ 4; Murray Decl. (2nd) ¶ 6.)
Murray further adds that it is NAR's "regular practice . . . to
make or maintain such records," which he routinely relies on in
performing his employee responsibilities.  (Murray Decl. (1st) ¶
4; Murray Decl. (2nd) ¶ 6.)  As required to lay a proper

---

[7]     Rule 803(6) permits the admission of a record that would otherwise
qualify as hearsay, if it "was made at or near the time by . . . someone with
knowledge[,] . . . was kept in the course of a regularly conducted activity
of a business, . . . [and] making the record was a regular practice of that
activity."  Fed. R. Evid. 803(6).  These conditions must be "shown by the
testimony of the custodian or another qualified witness."  *Id.*

foundation for the admission of a business record under FRE 803(6), Murray has demonstrated that he is a qualified witness, that the statements are based on personal knowledge or his review of NAR's business records, and that the documents were kept in the ordinary course of business. *See United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014).

Crest assigned plaintiff's debt to NAR on January 17, 2018. Pursuant to the NAR Assignment, Crest assigned to NAR "full power to sue, . . . or in another legal manner enforce collection" of plaintiff's past due debt under the Lease. (*See* NAR Assignment; Murray Decl. (1st) ¶ 7.) The assignment of plaintiff's account was also registered in NAR's Acknowledgement Report. The NAR Assignment and Acknowledgement Report are contemplated in the procedure for account assignments set forth by the Assignment Agreement. Specifically, the Assignment Agreement provided that "[a]ssignments shall be made by forwarding collection accounts from [Crest]," and after each such assignment, "NAR will send [Crest] an Acknowledgment Report" to serve as "evidence that the account has been validly assigned [] pursuant to the terms of this Agreement." (Assignment Agreement § 2.) Crest agreed that each assignment of an account to NAR would constitute the transfer to NAR of Crest's "claims and demands against" the assigned account, and that the transfer included an assignment to NAR of "all of

22

[Crest's] rights, title and interest therein, . . . and all
rights of action accrued or to accrue." (*Id.* § 1.)

Plaintiff disregards the broad language of the
Assignment Agreement and argues that the net effect of the
Assignment Agreement was merely "to give the Defendant N.A.R.
access to Crest's accounts for a temporary period <u>for the</u>
<u>purposes of collection</u> . . . ," but did not assign NAR the
ability to arbitrate assigned accounts. (Opp. 6 (emphasis in
original).) She reasons that because the Assignment Agreement
did not expressly assign the Arbitration Clause, the parties
must have intended to exclude the provision from the scope of
Crest's assignment. (*Id.* 5.) Plaintiff cites no legal
authority to support her contention, which is unsurprising,
because it runs headlong into New York law's presumption that
"an arbitration clause is generally held to apply to the
assignee of a contract." *Variblend*, 970 F. Supp. 2d at 166; *see*
*Lipman*, 43 N.E.2d at 819 ("[T]he arbitration clause is an
integral part of the contract and may be availed of, not only by
the original parties but also by assignees."); *Tanbro Fabrics*
*Corp. v. Deering Milliken*, Inc., 35 A.D.2d 469, 471 (N.Y. App.
Div. 1st Dep't 1971) ("[T]he assignee of a contract acquires the
assignor's rights therein and assumes its obligations including
an agreement to arbitrate."); *Blum's, Inc. v. Ferro Union Corp.*,
36 A.D.2d 584, 585 (N.Y. App. Div. 1st Dep't 1971), *aff'd*, 274

N.E.2d 751 (N.Y. 1971) ("An assignee who has taken over the rights of an assignor is bound to an arbitration clause in the assigned contract."); *In Re Lowenthal*, 199 A.D. 39, 44 (N.Y. App. Div. 1st Dep't 1921) ("It seems to us that, where a contract is assignable, the arbitration clause is an integral part thereof, and may be availed of by either party to the contract or by his legal representatives or assigns . . . . If the arbitration clause of an assignable contract of sale is not available, except as to the parties to such a contract, it would then be a simple matter, if either party sought to escape the effect of such a clause, to assign the contract to a third party."). The court finds no reason to deviate from that long-standing rule here.

Plaintiff's other challenges to NAR's assignment likewise fail. Plaintiff notes that the Assignment Agreement does not grant NAR full rights to collect debts owed to Crest under the Lease. It is true that, under the Assignment Agreement, Crest retains the right to approve settlements between NAR and Crest's debtors, halt NAR's efforts to collect an account, and recall an assigned account under certain circumstances. (Assignment Agreement §§ 8, 9, 10.) All this proves, however, is that where Crest and NAR intended to limit the scope of NAR's assignment, they stated so expressly. They did no such thing with respect to the Arbitration Clause.

Instead, Crest and NAR intended that Crest assign its arbitration rights to NAR.  Plaintiff also argues, in a footnote, that the NAR Assignment, dated December 19, 2018, was "created after this lawsuit began," and therefore, is irrelevant to the Assignment Agreement in place when defendant's alleged FDCPA violation occurred in January 2018. (Opp. 7 (emphasis in original).)  The NAR Assignment, however, is clearly relevant to the question of whether NAR was indeed the assignee of plaintiff's account, and plaintiff does not otherwise challenge the trustworthiness of the NAR Assignment, or its admissibility as a business record under FRE 803(6).[8]  Moreover, plaintiff's account is among those listed in the Acknowledgement Report, which the Assignment Agreement states is evidence of a valid assignment.

NAR has thus established by a preponderance of the evidence that it is the valid assignee of plaintiff's account, and Crest's rights thereunder, including the right to elect arbitration for any claims arising under the Lease.  For all plaintiff's protestations, she has not come forward with any document to refute defendant's submissions, produced an affidavit that refutes defendant's evidence, or even suggested

---

[8]     To the extent plaintiff does question the NAR Assignment's authenticity, "even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 293 (D. Conn. 2015) (quotation marks and citations omitted).

there are documents that will be produced in discovery that
refute defendant's showing.  Accordingly, there is no genuine
dispute of material fact that NAR may elect to arbitrate
plaintiff's FDCPA claim, and that plaintiff's claim is within
the Arbitration Clause of the Lease.

## V.    Class Action Waiver

        Defendant's motion also requests that this court
strike the complaint's class allegations based on the Lease's
class action waiver. Plaintiff does not meaningfully oppose this
request.  Nor could she.  The Arbitration Clause is clear: if
either party elects arbitration, plaintiff will lose her right
to "participate in a class action in court or in arbitration,
either as a class representative, class member or class
opponent."  (Lease § 15(f).)  Class action waivers, like the one
in the Lease, are valid and enforceable.  *Shetiwy*, 959 F. Supp.
2d at 474-75 ("[A] generalized congressional intent to vindicate
statutory rights [such as those in the FDCPA] cannot override
the FAA's mandate that courts enforce arbitration clauses,
including those with class action waivers, as written.") (citing
*Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 232-33
(2013)); *see also Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d
478, 480 (N.Y. App. Div. 1st Dep't 2004) ("The arbitration
provision is enforceable even though it waives plaintiff's right

to bring a class action."). Accordingly, defendant's motion to strike plaintiff's class action claims is granted.

## CONCLUSION

For the foregoing reasons, defendant's motion to compel arbitration and strike plaintiff's class action claims is GRANTED. The FAA "mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration." *See Katz v. Cellco P'ship*, 794 F.3d 341, 345-47 (2d Cir. 2015); *see also* 9 U.S.C. § 3 ("[T]he court . . . shall . . . stay the trial of the action until such arbitration has been held . . . ."). Thus, a stay of these proceedings is appropriate. The Clerk of Court is respectfully requested to mark this case as STAYED pending arbitration of plaintiff's claim. The parties are directed to jointly update the court within five days after receiving a decision in the arbitration, or otherwise resolving this matter.

**SO ORDERED.**

Dated:    March 27, 2020
          Brooklyn, New York

                                        /s/
                          _____
                          **KIYO A. MATSUMOTO**
                          United States District Judge
                          Eastern District of New York